IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JOHN PAUL SCHROEDER,**

Petitioner,

**Civ. Nos.**    **6:10-cv-00505-TC**
**6:10-cv-06197-TC**
**6:10-cv-06198-TC**

v.

**OPINION AND ORDER**

**JEFF PREMO,**

Respondent.

_____

**MCSHANE, Judge**:

Petitioner filed three petitions[1] for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his various convictions in three underlying cases.

In the first petition, Civ. No. 6:10-cv-06197-TC (Pet. 1),[2] petitioner challenges a jury conviction of Burglary in the First Degree and Sodomy in the First Degree in Lane County Circuit Court Case No. 10-80-01863. *See* Exs. to Answer Pt. A, Ex. 101, Pet. 1, ECF No. 18 (conventionally filed). Magistrate Judge Thomas M. Coffin issued a Findings and Recommendation (F&R) on August 19, 2014, in which he recommended that this Court deny this petition. *See* F&R 1–18, Pet. 1, ECF No. 82.

---

[1] Petitioner originally filed a single petition challenging jury convictions in all three underlying cases. *See* Pet. Writ of Habeas Corpus 1–72, Pet. 1, ECF No. 2.
[2] For ease of convenience, this Court will cite to a specific petition by using either "Pet. 1," "Pet. 2," or "Pet. 3."

In the second petition, Civ. No. 6:10-cv-00505-TC (Pet. 2), petitioner challenges a jury conviction of Burglary in the First Degree and Attempted Rape in the First Degree in Lane County Circuit Court Case No. 10-80-02651. *See* Exs. to Answer Pt. A, Ex. 101, Pet. 2, ECF No. 33 (conventionally filed). Judge Coffin issued an F&R on August 22, 2014, in which he recommended that this Court deny this petition. *See* F&R 1–16, Pet. 2, ECF No. 93.

In the third petition, Civ. No. 6:10-cv-06198-TC (Pet. 3), petitioner challenges a jury conviction of Burglary in the First Degree, Robbery in the First Degree, two counts of Rape in the First Degree, and two counts of Sodomy in the First Degree in Marion County Circuit Court Case No. 124003. *See* Exs. to Answer Pt. A, Ex. 101, Pet. 3, ECF No. 18 (conventionally filed). Judge Coffin issued an F&R on August 25, 2014, in which he recommended that this Court deny this petition. F&R 1–14, Pet. 3, ECF No. 84.

Because these matters are now before this Court, *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b), this Court reviews all portions of the F&Rs subject to objection *de novo*, 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Petitioner timely filed objections to each F&R. *See* Objections F&R 1–65, Pet. 1, ECF No. 96; Objections F&R 1–55, Pet. 2, ECF No. 106; Objections F&R 1–85, Pet. 3, ECF No. 97. Upon review, this Court finds no error in the F&Rs issued by Judge Coffin.

## FACTUAL AND PROCEDURAL BACKGROUND

In the late 1970s and early 1980s, the Eugene Police Department (EPD) investigated approximately 130 residential burglaries and sexual assaults involving a similar modus operandi: a masked intruder operating primarily in the west university neighborhood near the University of Oregon.

On February 16, 1980, Rick Tanner contacted EPD to report an attempted burglary at his apartment on East 17th Street near the University of Oregon. Based upon information provided by Mr. Tanner, EPD tracked down petitioner's vehicle and apprehended petitioner. An inventory and subsequent search of petitioner's vehicle and home revealed, among other items, a homemade mask, a nickel plated revolver, a surgical glove, garments with eye holes cut out of them, and a blender matching one reported stolen by a sexual assault victim.

Petitioner was subsequently indicted on February 27, 1980, in Case No. 10-80-01863 (Pet. 1); March 21, 1980, in Case No. 124003[3] (Pet. 3); and May 1, 1980, in Case No. 10-80-02651 (Pet. 2). The Lane County Court appointed John Halpern as counsel for petitioner in all three matters.

On May 2, 1980, a hearing was held in Case Nos. 10-80-01863 (Pet. 1) and 10-80-02651 (Pet. 2) to consider petitioner's motions for authorization of expert witness expenses. Tr. Designation Pt. A., R. 1–12, May 2, 1980, Pet. 1, ECF No. 21 (conventionally filed). Petitioner's motions were denied.

On May 7, 1980, a hearing was held in all three cases to consider petitioner's motions for change of venue. *See* Tr. Designation Pt. A, R. 2–44, May 7, 1980, Pet. 1, ECF No. 21. Petitioner's motions were denied.

On June 2, 1980, a hearing was held in Case Nos. 10-80-01863 (Pet. 1) and 10-80-02651 (Pet. 2) to consider petitioner's motions to substitute counsel. Tr. Designation Pt. A., R. 1–18, June 2, 1980, Pet. 1, ECF No. 21. Petitioner's motions were denied.

Between June 10 and 11, 1980, a hearing was held in all three cases to consider petitioner's motions for authorization of expert witness expenses and suppression of evidence.

---

[3] This case was originally assigned Case No. 10-80-02652.

3 – OPINION AND ORDER

*See* Tr. Designation Pt. A, R. 1–151, June 10, 1980, Pet. 1, ECF No. 21; Tr. Designation Pt. A., R. 1–41, June 11, 1980, Pet. 1, ECF No. 21. These motions were denied in relevant part. On June 11, 1980, Mr. Halpern orally moved to withdraw as counsel. *See id.* at R. 5–12, June 11, 1980. This motion was denied.

Between June 17 and 20, 1980, a jury trial was held in Lane County for Case No. 10-80-01863 (Pet. 1). Petitioner, who was represented by Mr. Halpern, was convicted of Burglary in the First Degree and Sodomy in the First Degree, and sentenced to 20 years' imprisonment.

Between July 9 and 10, 1980, a jury trial was held in Lane County for Case No. 10-80-02651 (Pet. 2). Petitioner, who was represented by Mr. Halpern, was convicted of Burglary in the First Degree and Attempted Rape in the First Degree, and sentenced to 20 years' imprisonment.

Following petitioner's second jury trial, petitioner renewed his motion for change of venue in Case No. 124003 (Pet. 3). Petitioner's motion was granted and Case No. 124003 was transferred from Lane County to Marion County. Petitioner was subsequently appointed new counsel, Michael Mills.

Between May 27 and June 5, 1981, a jury trial was held in Marion County for Case No. 124003 (Pet. 3). Petitioner, who was represented by Mr. Mills, was convicted of Burglary in the First Degree, Robbery in the First Degree, two counts of Rape in the First Degree, and two counts of Sodomy in the First Degree, and sentenced to 100 years' imprisonment.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),[4] habeas corpus relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless such adjudication:

---

[4] Pub. L. No. 104–132, 110 Stat. 1214 (codified as amended in scattered sections of U.S.C.).

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) includes two alternative tests: the "contrary to" test and the "unreasonable application" test. Under the "contrary to" test, a "state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Under the "unreasonable application" test, this Court "may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. To be unreasonable, the state court decision must be "more than incorrect or erroneous," it must be an "objectively unreasonable" application of clearly established law. *Andrade*, 538 U.S. at 75–76 (citations omitted).

Section 2254(d)(2) involves purely factual questions resolved by the state court. Such factual determinations "are presumed correct absent clear and convincing evidence to the contrary," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted), and are not unreasonable merely because a federal court may have reached a different conclusion as an initial matter, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1411 (2011).

5 – OPINION AND ORDER

## DISCUSSION

Petitioner challenges jury convictions in three underlying cases: Civ. Nos. 6:10-cv-06197-TC (Pet. 1); 6:10-cv-00505-TC (Pet. 2); and 6:10-cv-06198-TC (Pet. 3). This Court addresses specific grounds for relief in each petition, but otherwise relies on the findings of Judge Coffin in the respective F&Rs, ECF Nos. 82 (Pet. 1), 93 (Pet. 2), 84 (Pet. 3).[5]

### I. First Petition: Civ. No. 6:10-cv-06197-TC

In the first petition, petitioner alleges eight grounds for relief: (1) violative denial of petitioner's pretrial motion to change venue; (2) violative use of identification procedures; (3) violative refusal to authorize funds for an expert witness and exclusion of expert testimony; (4) violative prosecutorial misconduct during closing argument; (5) ineffective assistance of counsel regarding failure to object to prosecutorial misconduct during closing argument; (6) violative failure to substitute counsel; (7) ineffective assistance of counsel regarding failure to object to prosecutor's references to a single composite of petitioner's facial features; and (8) deprivation of petitioner's right to a fair trial through the cumulative effect of these errors. *See* Br. Supp. Pet. Writ Habeas Corpus 1–70, Pet. 1, ECF No. 36; Supplemental Br. 1–11, Pet. 1, ECF No. 55. This Court addresses each ground in sequence.

As to the first ground, denial of petitioner's motion to change venue,[6] petitioner argues that his trial was prejudiced by pretrial publicity.[7] The Oregon Appellate Court, in *State v.*

---

[5] To the extent that petitioner attempts to raise new grounds for relief in his voluminous objections to the F&Rs, this Court declines to consider those grounds. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) ("[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."). Petitioner, who filed these petitions in 2010, had approximately four years to brief his additional grounds for relief. In fact, in all three underlying cases, Judge Coffin granted petitioner leave to file oversize briefs and replies in support of his petitions for habeas corpus. Petitioner's inferred explanation—conflict with counsel—is insufficient to give rise to this Court's consideration of his new grounds for relief. Petitioner was represented by counsel for nearly two years, yet he failed to notify Judge Coffin of his conflict with counsel *and* he failed to brief the additional grounds for relief prior to the issuance of the F&Rs.
[6] *See* Tr. Designation Pt. A, R. 2–44, May 7, 1980, Pet. 1, ECF No. 21.

*Schroeder*, 55 Or. App. 932, 935–36 (*Schroeder I*), *review denied*, 293 Or. 373 (1982), concluded that it could not "say that the media coverage of defendant's arrest was so prejudicial and so pervasive that it was an abuse of discretion to deny the motion for a change of venue." The Appellate Court further noted that it "reviewed the transcript of the voir dire, and it appears that the defense did not encounter difficulty in finding jurors who were impartial." *Id.* at 936. This Court, having independently reviewed the record,[8] finds that denial of petitioner's motion to change venue did not satisfy 28 U.S.C. § 2254(d). The state decision was neither "contrary to" nor involved an "unreasonable application" of clearly established federal law at that time. *See Murphy v. Florida*, 421 U.S. 794, 800 (1975) (concluding that the exclusion of 20 out of 78 persons "by no means suggest[ed] a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own"); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("It is not required, however, that the jurors be totally ignorant of the facts and issues involved."); *see also* F&R 7–9, Pet. 1, ECF No. 82. Nor was the state decision an unreasonable determination of the facts. *See, e.g.*, Tr. Designation Pt. A, R. 107–08, June 17, 1980, Pet. 1, ECF No. 21.[9]

---

[7] Petitioner relies primarily on a police press conference held on February 29, 1980, television newscasts, and newspaper articles.

[8] *See, e.g.*, Exs. to Answers Pt. A, Ex. 105-B, R. 404–21, 423, Pet. 1, ECF No. 18 (conventionally filed); Tr. Designation Pt. A, R. 92–256, Pet. 1, ECF No. 21; Tr. Designation Pt. B, R. 258–522, Pet. 1, ECF No. 22 (conventionally filed).

[9] For example, during voir dire, the following dialogue took place between plaintiff's counsel Mr. Halpern and a prospective juror:

> [Q] Have you heard anything about this case or read anything about it, T.V. or newspaper?
>
> A The -- only thing I can recall is there was some problem with a Court-appointed attorney not too long ago.
>
> Q That would be myself.
>
> A . . . I didn't follow the charges in the news media.

7 – OPINION AND ORDER

As to the second ground, violative use of identification procedures, petitioner argues that the identifications obtained from Ms. Bowen, and then later, Ms. Cummins, were the product of an impermissibly suggestive photographic lineup. *See* Br. Supp. Pet. Writ Habeas Corpus 48–51, ECF No. 36.[10] As to Ms. Bowen, petitioner claims that his image was larger than that of any of the other seven individuals in the photographs presented. *See* Tr. Designation Pt. A, R. 6, June 17, 1980, Pet. 1, ECF No. 21.[11] The Oregon Appellate Court considered these photographs and determined that they were "of quite similar-looking individuals, and [that the] defendant [was] not emphasized in such a way as to make the process unduly suggestive." *Schroeder I*, 55 Or. App. at 936. As to Ms. Cummins, petitioner claims that Ms. Cummins was "made to feel [that] she had to or should choose one of" the photographs. Br. Supp. Pet. Writ Habeas Corpus 48, ECF No. 36. The Oregon Appellate Court agreed that the photographic identification procedure was unduly suggestive under *State v. Classen*, 285 Or. 221 (1979), as it related to Ms. Cummins, but determined that the identification itself was nonetheless "made on the basis of a source independent of the suggestive procedure." *Schroeder I*, 55 Or. App. at 936–37; *see also Manson*

---

Q I see.

A I really didn't do that. I did read the article about the problem with yourself. And that's it.

*Id.*

[10] Officer Melinda Richardson created a photographic lineup that included eight different numbered photographs. This lineup was shown to Ms. Cummins on February 19, 1980, and to Ms. Bowen on February 21. 1980. Both Ms. Cummins and Ms. Bowen identified petitioner's photograph. *See* Tr. Designation Pt. A, R. 12–86, June 17, 1980, Pet. 1, ECF No. 21. This photographic lineup was not preserved as evidence.

[11] Petitioner's counsel Mr. Halpern argued:

So it would be our position . . . that the photographs that were shown to Miss Bowen are suggestive. They're impermissibly suggestive. And that the nature of the photographs . . . is such that Mr. Schroeder's picture is by far the largest one. It's a full face view, so to speak. The face in the picture is quite a bit larger in that than any of the larger pictures. And that unquestionably draws attention to that picture.

*Id.*

8 – OPINION AND ORDER

*v. Brathwaite*, 432 U.S. 98, 114 (1977) (holding that "reliability is the linchpin in determining the admissibility of identification testimony."). The Court explained:

> The witness had a clear view of the man who came to the door of the apartment that day, and she spoke with him face to face. Although the conversation was short, lasting from 30 seconds to two minutes, the witness paid particular attention, because she was suspicious of this long-haired man coming to see the "clean-cut" residents of the apartment. She gave a description to the police right after the assault was reported. Although there was an interval of eight months between the crime and the identification in the throw-down, Cummins identified defendant without hesitation and was certain of that identification.

*Id.* at 937. This decision was neither "contrary to" nor involved an "unreasonable application" of clearly established federal law at that time. As indicated in *Brathwaite*, the factors to be considered in determining admissibility include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." 43 U.S. at 114. Those factors, which cannot be said to have been *unreasonably* considered by the Oregon Appellate Court as to Ms. Cummins's identification, are also met as to Ms. Bowen's identification.

Ms. Bowen initially observed a man for five to ten seconds as she passed him in the hall while carrying her laundry on June 22, 1979. Tr. Designation Pt. A, R. 30, June 17, 1980, Pet. 1, ECF No. 21. Ms. Bowen, who was frightened by the man's size and odor, paid special attention to his physical characteristics.[12] Ms. Bowen returned to her apartment approximately five minutes later. *See* Tr. Designation Pt. A, R. 30–31, June 17, 1980, Pet. 1, ECF No. 21. The same

---

[12] Ms. Bowen initially described the assailant as: about six feet three inches tall, about 230 to 250 pounds; in his late twenties; with dirty reddish brown hair in a ponytail down to his shoulder blades; a full unkept beard and mustache; and wearing blue overalls, blue jeans, and a blue shirt. *See id.* at R. 28; Tr. Designation Pt. B, R. 566–67, June 18, 1980, Pet. 1, ECF No. 22. On February 16, 1980, petitioner informed officer Merle Olson that he was "six two," between "220 and 230" pounds, and twenty-nine years of age. *See* Tr. Designation Pt. B, R. 688–89, June 18, 1980, Pet. 1, ECF No. 22.

man,[13] but wearing a mask that revealed his beard, jumped out of her kitchen hallway armed with a gun. *See* Tr. Designation Pt. B, R. 571–73, June 18, 1980, Pet. 1, ECF No. 22. That man then forced Ms. Bowen to perform oral sex at gunpoint. *See id.* at R. 575. During trial, Ms. Bowen repeatedly indicated that there was "no question" in her mind that petitioner was the assailant. *See id.* at R. 579, 583. Combined, these factors can reasonably be interpreted to support admission of Bowen's identification testimony independent of the alleged suggestive procedure. *See Coleman v. Alabama*, 399 U.S. 1, 3–6, 13 (1970) (plurality opinion) (holding admissible an in-court identification where a witness briefly viewed two assailants in the headlights of a passing car).

As to the third ground, violative refusal to authorize funds for an expert witness and exclusion of expert testimony, petitioner argues that he was denied due process and compulsory process. *See* Br. Supp. Pet. Writ Habeas Corpus 51–57, ECF No. 36. Petitioner moved for authorization of expert witness[14] expenses totaling $500 on May 2 and June 10, 1980. *See* Tr. Designation Pt. A, R. 1–12, May 2, 1980, Pet. 1, ECF No. 21; Tr. Designation Pt. A., R. 1–34, June 10, 1980, Pet. 1, ECF No. 21. The trial court denied the initial motion, explaining:

> One, I think it is clear from [*State v. Calia*, 15 Or. App. 110 (1973)], and I agree . . . I can't conceive of how over objection the evidence would be admissible from an expert such as this in an identification case.
>
> But secondly . . . I'm not prepared to start appointing experts in a case [such as this]. Identification defense is a defense that's been in existence

---

[13] Ms. Bowen connected her assailant to the man she had earlier passed in the hall based upon his clothing, body type, facial hair, eyes, and body odor. *See id.* at R. 34; Tr. Designation Pt. B, R. 571–72, 598–99, June 18, 1980, Pet. 1, ECF No. 22.

[14] Petitioner's attorney, Mr. Halpern, noted that the proposed expert, Dr. Harold Hawkins, was expected to provide "a definitive statement" as to whether he believed "the victim's recognition was accurate or inaccurate," and whether the photographic identification process was visually suggestive. Tr. Designation Pt. A, R. 4–6, May 2, 1980, Pet. 1, ECF No. 21. On June 10, 1980, Mr. Halpern renewed petitioner's request for authorization of expert witness expenses. *See Id.* at R. 1–34, June 10, 1980. Pursuant to that renewed request, Mr. Halpern examined Dr. Hawkins, who testified that he was prepared "to discuss a number of factors that are unique to these cases which will have an impact on the accuracy with which people can recall." *Id.* at R. 7.

> ever since criminal law was instituted. There has been no need in all these
> years to have psychiatrists, psychologists, or what have you help them.

*Id*. at R. 9–10, May 2, 1980; *see also id*. at R. 149, June 10, 1980 (denying renewed motion for

authorization of expert witness expenses). These decisions were neither "contrary to" nor

involved an "unreasonable application" of clearly established federal law at that time. As

indicated in *Chambers v. Mississippi*, 410 U.S. 284, 294–303 (1973), a state evidentiary law *can*

deprive a criminal defendant of a fair trial.[15] This matter, however, differs in significant respects

from *Chambers*. Unlike in *Chambers*, petitioner was neither prevented from cross-examining

and impeaching key witnesses,[16] nor from calling witnesses to refute the state's description of

the assailant. *See, e.g.*, *id*. at R. 713–720; *id*. at R. 766–779, June 20, 1980.

      As to the fourth and fifth grounds, prosecutorial misconduct involving closing arguments

and ineffective assistance relating to that misconduct, this Court relies on Judge Coffin's F&R

procedural default findings. *See* F&R 12–14, Pet. 1, ECF No. 82.

      As to the sixth ground, denial of petitioner's motion to substitute counsel, petitioner

argues that this denial violated his right to counsel under the Sixth Amendment. *See* Br. Supp.

Pet. Writ Habeas Corpus 65–67, ECF No. 36. This Court, having independently reviewed the

record,[17] finds that denial of petitioner's motion to substitute counsel did not satisfy 28 U.S.C. §

2254(d). The state decision was neither "contrary to" nor involved an "unreasonable application"

of clearly established federal law at that time. Petitioner explained seven different factual

---

[15] In *Chambers*, a jury convicted the defendant of murdering a police officer. 410 U.S. at 285. During trial, defendant was prevented from introducing testimonial evidence that a third-party, Gable McDonald, was the assailant. *Id*. at 289. Mississippi's evidentiary rules, i.e., "party witness" or "voucher" rule and hearsay rule, prevented defendant from cross-examining McDonald, and presenting the testimony of three witnesses who had heard McDonald confess to the murder on three separate occasions. *See Id*. at 291–94, 298. The Court determined that under those facts and circumstances, "the trial court deprived Chambers of a fair trial." *Id*. at 303.

[16] For example, Mr. Halpern cross-examined Ms. Bowen, Donald Schuessler, and Ms. Cummins. *See* Tr. Designation Pt. B, R. 587–608, 614–16, 655–64, 700–08, June 19, 1980, Pet. 1, ECF No. 22.

[17] *See* Tr. Designation Pt. A, R. 1–19, June 2, 1980, Pet. 1, ECF No. 21; Tr. Designation Pt. A, R. 5–12, June 11, 1980, Pet. 1, ECF No. 21.

11 – OPINION AND ORDER

grounds for his motion to dismiss his counsel. *See* Tr. Designation Pt. A, R. 1–8, June 2, 1980, Pet. 1, ECF No. 21. Those grounds, insofar as they are credited,[18] most accurately reflect a souring attorney-client relationship and concern with trial strategy, and not a denial of petitioner's right to counsel under the Sixth Amendment.[19] Even had petitioner's factual grounds established irreconcilable conflict under contemporary case law, such law was not clearly established in 1980. *See Slappy*, 461 U.S. at 12, 15 (upholding the trial court's denial of petitioner's motion for continuance under the Sixth Amendment despite petitioner's "adamant—even contumacious—refusal to cooperate with [his counsel] or to take the stand as [his counsel] advised . . . [and] [petitioner's] numerous outbursts and disruptions").

As to the seventh ground, alleged ineffective assistance of counsel relating to a composite of petitioner's facial features, petitioner argues that his attorney provided ineffective assistance by failing to object to the prosecutor's references to a single composite during opening and closing statements. *See* Supplemental Br. Supp. Pet. Writ Habeas Corpus 1–11, ECF No. 55. As indicated in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Petitioner's attorney, Mr. Halpern, when faced with testimony from Ms. Cummins that raised the possibility[20] that two composites of petitioner's facial features had been created,

---

[18] *Compare id.* at R. 6–7 (Mr. Schroeder testified that his attorney "provide [him] with his complete denial of a deal offered some weeks ago."), *with id.* at R. 17 ("[A]t no time contrary to any indication were any deals ever offered to Mr. Schroeder.").

[19] *See Morris v. Slappy*, 461 U.S. 1, 14 (1983) (holding that the Sixth Amendment does not guarantee a "'meaningful relationship' between an accused and his counsel"); *United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971) ("The right of an accused to court-appointed counsel does not carry with it the right to select a particular attorney." (citation omitted)); *see also* Peter W. Tague, *An Indigent's Right to the Attorney of his Choice*, 27 STAN. L. REV. 73, 79 (1974) ("[T]he right to effective representation is not interpreted to guarantee the defendant the best representation but only a certain minimum level of competence that an attorney . . . is expected to provide." (citations omitted)).

[20] Ms. Cummins testified that that there were two composites, but she believed that State Ex. 36, which was the composite presented to her at trial, was the composite that she assisted in creating. *See* Tr. Designation Pt. B, R. 702,

cannot be said to have acted *unreasonably*. Mr. Halpern cross-examined Ms. Cummins to confirm whether two composites had been created, *see id.* at R. 700–08, June 19, 1980; he moved for production of the possible second composite, *id.* at R. 709–10, June 19, 1980; and he called and examined Detective Griesel, *id.* at R. 731–52, 761–65, June 20, 1980. Petitioner has not demonstrated that Mr. Halpern's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

As to the eighth ground, deprivation of petitioner's right to a fair trial through the cumulative effect of alleged errors, this Court does not recognize a basis for cumulative error. *See Boyde v. Brown*, 404 F.3d 1159, 1176 (9th Cir.) ("Because we find no merit in [petitioner]s] claims of constitutional error . . . we also reject his contention that he was prejudiced by the cumulative effect of the claimed errors), *amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005).

## II. Second Petition: Civ. No. 6:10-cv-00505-TC

In the second petition, petitioner alleged eight grounds for relief: (1) violative denial of petitioner's pretrial motion to change venue; (2) violative use of identification procedures; (3) violative exclusion of expert testimony; (4) ineffective assistance of counsel regarding failure to object to criminalist's testimony; (5) ineffective assistance of counsel regarding failure to impeach victim with prior inconsistent statements; (6) ineffective assistance of counsel regarding failure to object to prosecutorial misconduct during closing argument; (7) violative failure to substitute counsel; and (8) deprivation of petitioner's right to a fair trial through the cumulative

---

June 19, 1980, Pet. 1, ECF No. 22. Ms. Bowen also testified that State Ex. 36 was an "accurate representation of" the composite she assisted in creating. *See id.* at R. 567. Detective Ronald Griesel, the individual who recorded State Ex. 36, testified that Cummins and Bowen made the same composite. *Id.* at R. 758, June 20, 1980; *see also id.* at R. 710, June 19, 1980 ("[Prosecutor]: As far as I know, what's been represented to me, there's one composite. And that's it.").

effect of these errors. *See* Br. Supp. Pet. Writ Habeas Corpus 1–73, Pet. 2, ECF No. 63. This Court addresses each ground in sequence.

As to the first ground, denial of petitioner's motion to change venue, petitioner again argues that his trial was prejudiced by pretrial publicity. *See* Br. Supp. Pet. Writ Habeas Corpus 29–37, Pet. 2, ECF No. 63. Petitioner's motion to change venue was addressed in the hearing on May 7, 1980, discussed in section I above. *See* Tr. Designation, R. 2–44, May 7, 1980, ECF No. 36 (conventionally filed). Because petitioner relies on the same evidence addressed in section I, this Court relies on its previous analysis.[21]

As to the second ground, violative use of identification procedures, petitioner argues that the photographic lineup and in-court identifications obtained from Leslie Brumley were the product of an impermissibly suggestive procedure. *See* Br. Supp. Pet. Writ Habeas Corpus 37–41, Pet. 2, ECF No. 63. Ms. Brumley, who was sexually assaulted on July 14, 1978, was presented with a clothing lineup on February 20, 1980, and presented with a photographic lineup on March 1, 1980. *See* Tr. Designation, R. 3, 5–19, 21–22, 25–28, July 8, 1980, Pet. 2, ECF No. 36. At the clothing lineup, Ms. Brumley identified a surgical glove and blue plaid shirt as similar to those worn by her assailant. *Id.* at R. 18, 22, 27. At the photographic lineup, Ms. Brumley identified petitioner's photograph, which depicted petitioner in a shirt that was included in the earlier clothing lineup. *Id.* at 26–27. Ms. Brumley testified that she had seen a picture of petitioner in a newspaper article dated January 29, 1980, prior to her photographic lineup identification. *Id.* at R. 13–14, 19.[22] The trial court considered this evidence and found:

> [T]he photo lineup was conducted and was presented in a manner that was
> not impermissibly suggestive and was properly conducted. In fact, there

---

[21] Voir dire during this second trial was not transcribed.

[22] The record is ambiguous as to when Ms. Brumley briefly saw a side view of petitioner on television. *See id.* at R. 89–90, July 9, 1980.

> was no influence brought to bear by those conducting it to suggest or lead the witness to an identification, and further that the witness's in-court identification is based upon independent memory and reflection of the identity of the defendant, and is not tainted in any way by having viewed the photographic lineup, and that she will be entitled to identify the defendant during the course of the trial if she is able to do so at that time in the presence of the jury.

*Id.* at R. 34; *see also State v. Schroeder*, 55 Or. App. 1030, 1030 (affirming trial court decision), *review denied*, 293 Or. 456 (1982). This decision was neither "contrary to" nor involved an "unreasonable application" of clearly established federal law at that time. Utilizing the *Brathwaite* factors discussed in section I, this Court is persuaded that those factors can reasonably be interpreted to support admission of Brumley's identification testimony independent of the alleged suggestive procedure.

Ms. Brumley awoke at approximately 8:20 a.m. and discovered a strange man in her living room. Tr. Designation, R. 25–27, July 9, 1980, Pet. 2, ECF No. 36. Ms. Brumley observed that man at a distance of approximately five feet for thirty seconds in well-lit conditions. *Id.* at R. 27. Upon realizing that the man was an intruder, Ms. Brumley paid special attention to his physical characteristics. *See id.* at R. 29, 32, 42. Ms. Brumley was ordered to return to her bedroom. *Id.* at R. 32. The man later entered the bedroom, but was wearing a mask and gloves. *Id.* at R. 33. That man then forced Ms. Brumley to remove her clothing and laid on top of her until he ejaculated.[23] During this assault, Ms. Brumley again paid special attention to his physical characteristics. *Id.* at R. 33–37. Prior to and during trial, Ms. Brumley repeatedly indicated that she was certain that petitioner was the assailant. *See, e.g., id.* at R. 8, 12–13, July 8, 1980; *id.* at R. 57, July 9, 1980.

---

[23] The assailant did not penetrate Ms. Brumley. *Id.* at R. 40.

As to the third ground, violative exclusion of expert testimony, petitioner again argues that he was denied due process and compulsory process. *See* Br. Supp. Pet. Writ Habeas Corpus 41–45, Pet. 2, ECF No. 63. Petitioner's motion for authorization of expert witness expenses was addressed in the hearings on May 2 and June 10, 1980, discussed in section I above. Petitioner subsequently obtained independent funding and sought to introduce the same expert's testimony on July 9 and July 10, 1980. *See* Tr. Designation, R. 180–184, July 9, 1980, Pet. 2, ECF No. 36; Tr. Designation, R. 184–87, 198–218, July 10, 1980, Pet. 2, ECF No. 36. The trial court, following an in-camera examination of the expert, denied the motion. *See id.* at R. 218, July 10, 1980. The trial court relied upon its previous statement regarding the proposed testimony:"[i]t sounds to the Court like [Dr. Hawkin's testimony] is a violation of the providence of the jury to determine those facts." *Id.* at R. 184, July 9, 1980. This decision was neither "contrary to" nor involved an "unreasonable application" of clearly established federal law at the time. Again, as discussed in section I, this matter differs in significant respects from *Chambers. See supra* § I n.15 (discussing *Chambers*). Petitioner was neither prevented from cross-examining and impeaching key witnesses,[24] nor from calling witnesses to refute the state's description of the assailant. *See, e.g., id.* at R. 143–47, 151–53, 153–58, 159–62, 163–68, 172–76.

As to the fourth, fifth and sixth grounds, ineffective assistance of counsel relating to witness testimony and prosecutorial misconduct during closing argument, this Court relies on Judge Coffin's F&R procedural default findings. *See* F&R 12–15, Pet. 2, ECF No. 93.

As to the seventh ground, denial of petitioner's motion to substitute counsel, petitioner again argues that he was denied his right to counsel under the Sixth Amendment. *See* Br. Supp.

---

[24] For example, Halpern cross-examined Ms. Brumley, Officer Richardson, and James Pex. Tr. Designation, R. 58–79, 102–04, 134–39, July 9, 1980, Pet. 2, ECF No. 36.

Pet. Writ Habeas Corpus 67–70, Pet. 2, ECF No. 63. Petitioner's motion to substitute counsel in this matter was addressed in the same hearings on June 2 and June 11, 1980, discussed in section I above. *See* Tr. Designation Pt. A, R. 1–19, June 2, 1980, Pet. 1, ECF No. 21; Tr. Designation Pt. A, R. 5–12, June 11, 1980, Pet. 1, ECF No. 21. Because petitioner relies on the same evidence addressed in section I, this Court relies on its previous analysis.

As to the eighth ground, deprivation of petitioner's right to a fair trial through the cumulative effect of alleged errors, this Court does not recognize a basis for cumulative error. *See Boyde*, 404 F.3d at 1176.

## III. Third Petition: Civ. No. 6:10-cv-06198-TC

In the third petition, petitioner alleges eight grounds for relief: (1) deprivation of petitioner's right to a fair trial because of shackling; (2) violative exclusion of expert testimony; (3) ineffective assistance of counsel regarding failure to impeach witnesses with prior inconsistent statements; (4) ineffective assistance of counsel regarding failure to object to bite mark evidence based upon inadequate foundation; (5) ineffective assistance of counsel regarding statements made in petitioner's closing argument about possession of the assailant's clothing and counsel's failure to elicit differences in the descriptions provided by the witnesses; (6) ineffective assistance of counsel regarding the prejudicial introduction of inculpatory testimony; (7) ineffective assistance of appellate counsel regarding failure to assign as error the admission of other crimes evidence; (8) deprivation of petitioner's right to a fair trial through the cumulative effect of these errors. *See* Br. Supp. Pet. Writ Habeas Corpus 1–64, Pet. 3, ECF No. 54. This Court addresses each ground in sequence.

As to the first ground, deprivation of petitioner's right to a fair trial through shackling, petitioner argues that he was shackled without a constitutionally adequate showing of need

17 – OPINION AND ORDER

during trial. *See* Br. Supp. Pet. Writ Habeas Corpus 29–32, ECF No. 54. Petitioner moved to

remove his leg shackles on May 27, 1981, and subsequently for mistrial based upon his

continued shackling on June 8, 1981. *See* Tr. Designation Pt. A, R. 43, May 27, 1981, Pet. 3,

ECF No. 22 (conventionally filed); Tr. Designation Pt. B., R. 1373, June 8, 1981, Pet. 3, ECF

No. 23 (conventionally filed). The trial court denied the motions, explaining:

> I'm going to deny taking off your leg irons. They are not noticeable, first
> of all, and the sheriff is charged with the responsibility for the safety of the
> courtroom personnel, witnesses and relying upon his advi[c]e that you
> represent a security risk, Mr. Schroeder, it leaves me no other choice.

Tr. Designation Pt. A., R. 50, May 26, Pet. 3, ECF No. 22; *see also* Tr. Designation Pt. B., R.

1374, June 8, 1981, Pet. 3, ECF No. 23 (denying motion for mistrial based on "the reasons

indicated previously"). The Oregon Appellate Court reviewed this reasoning and determined that

the trial court's denial was an abuse of discretion. *See State v. Schroeder*. 62 Or. App. 331, 338

(*Schroeder III*), *review denied*, 295 Or. 161 (1983). Nonetheless, the Court concluded that the

error was harmless under the standard articulated in *Chapman v. California*, 386 U.S. 18, 24

(1976). *See Schroeder III*, 62 Or. App. at 338–39. This decision was neither "contrary to" nor

involved an "unreasonable application" of clearly established federal law at that time. As

indicated in *Brecht v. Abrahamson*, 507 U.S. 619, 636-38 (1993), this Court assesses

"constitutional error of the trial type" under the *Kotteakos*[25] harmless-error standard. Under that

standard, petitioner is "not entitled to habeas corpus relief" unless he "can establish that [the trial

error] resulted in actual prejudice." *Brecht*, 507 U.S. at 637 (citation and internal quotation marks

omitted). Petitioner has not made such a demonstration; the State's evidence was, if not

overwhelming, certainly weighty. *See Schroeder III*, 62 Or. App. at 338 ("[G]iven the

---

[25] *Kotteakos v. United States*, 328 U.S. 750 (1946).

overwhelming evidence of defendant's guilt, we conclude that the trial court's error in denying defendant's motion to remove his shackles during trial was harmless beyond a reasonable doubt.").

As to the second ground, violative exclusion of expert testimony, petitioner argues that he was denied due process and compulsory process. *See* Br. Supp. Pet. Writ Habeas Corpus 33–36, ECF No. 54. Petitioner moved to introduce expert testimony, which had been deemed inadmissible in the earlier trials discussed in sections I and II above, on June 8, 1981. Tr. Designation Pt. B., R. 1368–70, June 8, 1981, Pet. 3, ECF No. 23. The trial court denied the motion. *See id.* at R. 1370. The Oregon Appellate Court affirmed the denial, concluding that "[i]t is the province of the jury to weigh the evidence and to evaluate credibility." *Schroeder III*, 62 Or. App. at 340 (citation omitted). Again, as discussed in section I and II, this matter differs in significant respects from *Chambers*. *See supra* § I n.15 (discussing *Chambers*). Petitioner was neither prevented from cross-examining and impeaching key witnesses,[26] nor from calling witnesses to implicate a third-party as the assailant in the sexual assaults. *See, e.g., id.* at R. 1259–67, 1272–76, 1302–08, 1316–19, 1320, 1322–26, 1328, 1329–34, 1340–41, 1344, 1345–49, 1354, June 5–June 8, 1981, Pet. 3, ECF No. 23.

As to the third, fourth, fifth, and sixth grounds, ineffective assistance of counsel relating to witness impeachment, bite mark evidence, statements made in closing arguments, and the introduction of inculpatory evidence, this Court relies on Judge Coffin's F&R findings. *See* F&R 7–12, Pet. 3, ECF No. 84.

---

[26] For example, Mr. Mills cross-examined Ms. Hoffman, Ms. Thompson, Dr. Oliver G. Harris, Ms. Creighton, Ms. Wymer, and Mr. Ware. *See* Tr. Designation Pt. A, R. 298–341, 383–411, 583–634, 786–803, May 28–June 2, 1981, Pet. 3, ECF No. 22; Tr. Designation Pt. B., R 827–41, 857–65, 887–901, 1021–42, 1047–49, 1072–75, 1105–26, 1155–63, June 2–June 4, 1981, Pet. 3, ECF No. 23.

As to the seventh ground, ineffective assistance of appellate counsel relating to the introduction of other crimes evidence, this Court relies on Judge Coffin's F&R procedural default findings. *See* F&R 12–13, Pet. 3, ECF No. 84.

As to the eighth ground, deprivation of petitioner's right to a fair trial through the cumulative effect of alleged errors, this Court does not recognize a basis for cumulative error. *See Boyde*, 404 F.3d at 1176.

**CONCLUSION**

This Court ADOPTS Judge Coffin's F&Rs, ECF Nos. 82 (Pet. 1), 93 (Pet. 2), 84 (Pet. 3), in full. Petitioner Schroeder's petitions, ECF Nos. 1 (Pet. 1), 2 (Pet. 2), and 1 (Pet. 3), are DENIED. A certificate of appealability in each petition is DENIED because petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 30th day of July, 2015.

_____
**Michael J. McShane
United States District Judge**
